**IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| V. | ) | CASE NO:1:05-cr-161-T |
| | ) | |
| **BENNIE DEAN HERRING** | ) | |

**MOTION TO SUPPRESS and
CITATIONS OF AUTHORITY**

  Comes the defendant, Bennie Herring, pro se and by STANDBY Counsel and pursuant to Rule 12 of the Federal Rules of Criminal Procedure, and respectfully moves this Court to suppress all items seized and statements obtained as a result of a police stop and search of the truck driven by defendant Bennie Herring on or about July 7, 2005, in Coffee County, Alabama, in the Middle District of Alabama. As grounds for this motion, Mr. Herring would show that such stop, search and seizures occurred in violation of his rights to due process and protection from unreasonable searches and seizures, under the Fourth and Fifth Amendments to the U.S. Constitution.

**Facts**

  Information received in discovery indicates that, at a hearing in support of this Motion, the following would be shown:

  1.  On or about July 7, 2004, Mr. Herring was driving a truck in Coffee County, having just left the Coffee County Sheriff's impound lot.

  2.  As Mr. Herring drove his truck, he was stopped by Coffee County Sheriff's Deputies and other law enforcement officers, including Mark Anderson, Neal Bradley, Chris Davis, and others.

  3.  The offices claimed that they had stopped the truck due to the existence of

outstanding warrants in Dale County against Mr. Herring, based on information from Coffee County Sheriff's clerk Sandy Pope, Dale County Sheriff's department clerk Sharon, and Dale County Sheriff's Department Warrant Clerk Judy Trawick.

4. When Mr. Herring was stopped, he was immediately removed from his truck, searched and his person and his vehicle were searched. However, before the search was completed, the officers were made aware that Dale County had no outstanding warrants to be served on Mr. Herring.

5. During the search of Mr. Herring's person and vehicle, a firearm, ammunition, and small amount of suspected controlled substance, and possibly other items, were seized.

6. During the search and arrest, Mr. Herring made statements which the Government may or may not intend to introduce into evidence.

7. A subsequent lab test determined that the suspected controlled substance seized during the search of Mr. Herring and his vehicle consisted of 0.12 gram of methamphetamine.

**Grounds to Suppress**

8. The stop, search, and seizures of Mr. Herring were without warrant or consent and were conducted without lawful authority.

9. The searches described above and the consequent seizure of these items violated the Fourth and Fifth Amendments, in that:

    a. The warrantless stop and seizure of Mr. Herring was without probable cause or proper legal authority.

    b. The decision to stop the truck was not supported by applicable legal standards, was a mere subterfuge or pretext for unauthorized investigation, and was in violation of Mr.

Herring's constitutional rights to due process and protection from unreasonable searches and seizures.

  c. The search of Mr. Herring and the truck and the seizure of items found therein were the fruit of his improper arrest, were without probable cause or proper legal authority, and were without consent.

 10. The seizure and use of any statements obtained from Mr. Herring were obtained in violation of his rights under the Fifth Amendment, in that:

  a. The statements were obtained without required *Miranda* warnings, in violation of Mr. Herring's protection from self-incrimination under the Fifth Amendment.

  b. The statements were obtained as the product and "fruit" of Mr. Herring's illegal arrest and/or the illegal search of his person and vehicle, in violation of his Fifth Amendment rights to due process and protection from self-incrimination.

**Law**

 11. Generally, before officers may stop a car, the officers must have a reasonable suspicion that a traffic violation has occurred or that criminal activity is in progress. See, *Whren v. United States*, 517 U.S. 806, 809, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996); *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1967). "(R)easonable suspicion should be determined from the totality of the circumstances . . ." *United States v. Cotton*, 721 F.2d 350, 352 (11th Cir. 1983).

 12. Consideration of the legality of a stop under *Terry* also requires consideration of: (1) whether an officer's actions during the traffic stop were "reasonably related in scope to the circumstances which justified the interference in the first place." *United States v. Purcell*, 236 F.3d 1274, 1277 (11th Cir.2001) (quoting *Terry*, 392 U.S. at 20); and (2) whether the duration of the stop

was limited to the time necessary to effectuate the purpose of the stop. Id. (citing *United States v. Pruitt*, 174 F.3d 1215, 1219 (11th Cir.1999)). *United States v. Flowers,* 2004 WL 1336611, *4 (S.D.Fla. 2004). See also *United States v. Hardy*, 855 F.2d 753, 759 (11th Cir.1988) ("Several issues and circumstances are deemed relevant to the analysis, including the law enforcement purposes served by the detention, the diligence with which the police pursue the investigation, the scope and intrusiveness of the detention, and the duration of the detention.")

13. The law of arrest also is relevant to determining whether a detention is unreasonable. An arrest occurs when a law enforcement officer takes some action, by physical force or show of authority, resulting in the type of seizure which would induce a reasonable person to believe that he is not free to leave. *United States v. Mendenhall*, 446 U.S. 544, 553 (1980). An arrest is constitutionally valid, if "at the moment an arrest was made, the officers had probable cause to make it." *Beck v. Ohio*, 379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed.2d 142 (1964).

14. Detention based on an "unparticularized" or "unsupported" hunch violates the Fourth Amendment. *U.S. v. Perkins*, 348 F.3d 965, 972 (11th Cir. 2003); *U.S. v. Pruitt*, 174 F.3d 1215, 1221 (11th Cir. 1999). Certainly, once an officer learns that his "hunch" or his belief in the presence of criminal activity is false, the detention must immediately end.

15. The exclusionary rule principally serves "to deter future unlawful police conduct." *United States v. Calandra*, 414 U.S. 338, 347, 94 S.Ct. 613, 619, 38 L.Ed.2d 561 (1974). "[T]he rule is a judicially created remedy designed to safeguard Fourth Amendment rights through its deterrent effect . . ." Id. at 348, 94 S.Ct. at 620. Thus, the rule must be applied in light of its deterrent purpose. Under this rule, evidence obtained in violation of the Fourth or Fifth Amendment cannot be used in a criminal proceeding against the victim of the illegal search and seizure. *Weeks v. United States*,

232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652 (1914); *Mapp v. Ohio*, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed. 1081 (1961). This prohibition applies as well to the fruits of the illegally seized evidence. *Wong Sun v. United States*, 371 U.S. 471, 484, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963)." *United States v. Calandra*, 414 U.S. 338, 94 S.Ct. 613, 619, 38 L.Ed.2d 561 (1974). The exclusionary rule should apply as well to seizures made in violation of the rights to due process.

16.    Thus, under the circumstances of this case, items seized; all information obtained from or as a fruit of such seizures; and all information obtained as a result of Mr. Herring's stop, search, seizures and/or statements must be suppressed.

**WHEREFORE**, the defendant respectfully prays that this Motion be granted.

Respectfully submitted,

**s/Christine A. Freeman**
**CHRISTINE A. FREEMAN**
**TN BAR NO.: 11892**
STANDBY COUNSEL for Defendant Herring
Federal Defenders
Middle District of Alabama
201 Monroe Street , Suite 407
Montgomery, AL 36104
TEL:   (334) 834-2099
FAX:   (334) 834-0353
E-Mail: Christine_Freeman@fd.org

## CERTIFICATE OF SERVICE

      I hereby certify that on September 25, 2005, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following: Verne Speirs, Esquire, Assistant United States Attorney, One Court Square, Suite 201, Montgomery, Alabama 36104.

      **s/Christine A. Freeman**
**CHRISTINE A. FREEMAN**
**TN BAR NO.: 11892**
STANDBY COUNSEL for Defendant Herring
Federal Defenders
Middle District of Alabama
201 Monroe Street , Suite 407
Montgomery, AL 36104
TEL:   (334) 834-2099
FAX:   (334) 834-0353
E-Mail: Christine_Freeman@fd.org