IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CR. NO.  1:05cr161-T |
| | ) | |
| BENNIE DEAN HERRING | ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

The defendant, Bennie Dean Herring ("Herring"), is charged with one felony count of being a convicted felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) and one misdemeanor court of intentionally and knowingly possessing a mixture or substance containing a detectable amount of methamphetamine in violation of 21 U.S.C. § 844(a).  On September 25, 2005, Herring filed a motion to suppress (doc. # 16) asserting that a stop of his vehicle and a subsequent search of him and the vehicle lacked probable cause or consent and were conducted without a warrant or other lawful authority.  Herring sought suppression of all physical evidence seized during the search as well as suppression of statements made by him during a custodial interrogation prior to officers advising him of his *Miranda*[1] rights.

Relying on *Arizona v. Evans*, 514 U.S. 1 (1995), the United States argues that officers acted in good faith reliance on information that there was a valid outstanding arrest warrant for Herring when they stopped and arrested him.  On September 29, 2005, the court held an evidentiary hearing and heard argument on the motion.  Based on the evidence and argument of counsel, the court concludes that the motion to suppress is due to be granted in part and

---

[1] *See Miranda v. Arizona*, 384 U.S. 436 (1966).

denied in part.

# FACTS

The salient facts are undisputed. On July 7, 2004, Herring was at the Coffee County Sheriff Department, getting something out of his truck which had been impounded. Coffee County Sheriff's Investigator Mark Anderson arrived at work and learned that Herring was in the impound lot. Knowing from another officer that a warrant for Herring's arrest was outstanding, he asked Coffee County warrant clerk Sandy Pope to check whether there were any current arrest warrants in Coffee County for Herring.

Pope checked her computer database and advised Anderson that there were no active Coffee County warrants on Herring. Anderson then asked Pope to telephone the Dale County Sheriff's Department to see if they had any outstanding active warrants in Dale County on Herring. Pope telephoned Dale County warrant clerk Sharon Morgan who told Pope that there was an active Dale County felony warrant on Herring for Failure to Appear. Pope asked Morgan to fax her a copy of the warrant.

When Anderson learned from Pope that Dale County had an active outstanding warrant on Herring, he and Deputy Bradley left the Sheriff's department in Bradley's squad car. They pulled behind Herring as he was leaving the Sheriff's Department, turned on their lights, and pulled Herring over. Deputy Bradley radioed dispatch to inform them that they were stopping Herring. Herring was placed under arrest based on the Dale County felony warrant. After Herring was handcuffed Officer Anderson searched him and found in his left

front pocket a small plastic bag containing a powder residue which upon analysis tested positive for methamphetamine. The officers then searched Herring's vehicle incident to the arrest. Under the front seat, they found a handgun. The officers also found ammunition and a knife in a Lego® bucket in the front seat.

Herring was placed in the back of the patrol car during the search. While the search progressed, Lieutenant Davis arrived on the scene. As Davis stood outside the patrol car during the search, he heard Pope call over the radio that one of the officers on the scene needed to call her on the Southern Linc.[2] Pope then informed Davis that there was a problem with the warrant.[3] When the officers got back to the Sheriff's Department, they discovered that the warrant had been recalled. Nonetheless, the evidence shows that before the officers learned there was no warrant for him, Herring had already been arrested and the methamphetamine, firearm and ammunition had been found.

## DISCUSSION

Resolution of Herring's motion to suppress the seized evidence is governed by *Arizona v. Evans*, 514 U.S. 1 (1995). In *Evans,* the Supreme Court recognized a good faith exception to the exclusionary rule for evidence seized incident to an arrest which occurred as the result of an erroneous computer record indicating the existence of a valid arrest warrant. 514 U.S.

---

[2] The Southern Linc is a type of wireless communication that is more secure that the radio.

[3] When Pope spoke to Morgan, she asked Morgan to fax a copy of the warrant to her. Shortly thereafter, Morgan called Pope to inform her that she could not confirm the warrant because the warrant had been recalled. Less than fifteen minutes elapsed between the time Pope called Morgan and Morgan called Pope back.

at 7.  Relying on *United States v. Leon*,[4] the Court observed that the purpose of the exclusionary rule is to deter unlawful police conduct, "not mistakes by court employees." *Id*. at 14.  "[T]here is no basis for believing that the application of the exclusionary rule in these circumstances will have a significant effect on court employees responsible for informing the police that a warrant has been quashed." *Id*. at 15.  The Court concluded that "[a]pplication of the *Leon* framework supports a categorical exception to the exclusionary rule for clerical errors of court employees." *Id*.  Consequently, the *Leon* good-faith inquiry requires the court to determine whether the officers' conduct was objectively reasonable – that is, whether a reasonable officer would have relied on the information from the warrant clerk and acted in a similar manner.

Based on the evidence presented at the hearing, the court finds that the officers acted in good faith when they stopped and arrested Herring based on the representations of the warrant clerks that there was an active outstanding felony warrant for Herring in Dale County.[5]  The evidence also shows that as soon as the warrant clerks discovered their error, they informed the officers.  Thus, there is simply no reason to believe that application of the exclusionary rule here would deter the occurrence of any future mistakes. *Id*. at 14-15 ("[N]o

---

[4] *United States v. Leon*, 468 U.S. 897 (1984).

[5] Herring suggests that his truck was impounded so that he would be "suckered" into going to the Coffee County Sheriff's Department.  First, Herring presented no evidence that the officers who were involved in his arrest were also involved in any subterfuge to get him to go to the sheriff's office.  Moreover, even if the court were to assume that Herring had been "suckered" into going to the Sheriff's Department, Herring has presented no evidence that ties any subterfuge in any way to his subsequent arrest.  Herring's suggestion amount to mere speculation.

evidence [exists to show] that court employees are inclined to ignore or subvert the Fourth Amendment . . ."). The defendant's motion to suppress the physical evidence that was seized during the search incident to arrest on July 7, 2004, is due to be denied.

The defendant also seeks suppression of statements he made to police officers during the search of his vehicle, arguing that he was under arrest and subjected to custodial interrogation without the benefits of the *Miranda* warnings.[6] The United States concedes that Herring was not given *Miranda* warnings at the time he was arrested and before he made incriminating statements. At the evidentiary hearing on the defendant's motion to suppress, the government stipulated, in open court and on the record, that none of Herring's statements derived from the stop, search and seizure on July 7, 2004, would be admitted into evidence by the government during its case in chief.[7] Thus, the defendant's motion to suppress statements made during his stop, search and seizure on July 7, 2004, is due to be granted.

## CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that the defendant's motion to suppress be GRANTED in so far as it relates to statements made by Herring during the stop, search and seizure on July 7, 2004. It is further the

---

[6] *Miranda, supra*.

[7] Of course, should the defendant choose to testify at trial, his statements may be admissible for impeachment purposes. *See Walder v. United States,* 347 U.S. 62, 65 (1954); *see also, Harris v. New York*, 401 U.S. 222, 224 (1971); *United States v. Caron*, 474 F.2d 506, 508 (5th Cir. 1973) ("It is one thing to say that the Government cannot make an affirmative use of evidence unlawfully obtained. It is quite another to say that the defendant can turn the illegal method by which evidence in the Government's possession was obtained to his own advantage, and provide himself with a shield against contradiction of his untruths.")

RECOMMENDATION of the Magistrate Judge that the defendant's motion to suppress be DENIED in so far as it relates to any physical evidence seized on July 7, 2004. It is further

ORDERED that the parties shall file any objections to the said Recommendation on or before **October 7, 2005**.[8] Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation objected to. Frivolous, conclusive or general objections will not be considered by the District Court. The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a de novo determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982). *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982). *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Done this 3rd day of October, 2005.

    /s/Charles S. Coody
CHARLES S. COODY
CHIEF UNITED STATES MAGISTRATE JUDGE

---

[8] The court shortens the time for filing objections because this case is set for jury selection on October 12, 2005.