IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| V. | ) | CASE NO:1:05-cr-161-T |
| | ) | |
| BENNIE DEAN HERRING | ) | |

**OBJECTIONS TO RECOMMENDATION REGARDING MOTION TO SUPPRESS**

Comes the Defendant, Bennie Herring, *pro se* and by STANDBY Counsel and respectfully objects to the Recommendation of the U.S. Magistrate Judge concerning his Motion to Suppress (D.E. 25), as follows:

On July 7, 2004, the Defendant drove to the Coffee County Sheriff's impound lot, to check on another vehicle of his which had been impounded. Shortly after driving away from the impound lot, the Defendant was stopped by Coffee County sheriff's deputies. The deputies claimed that there was a warrant from Dale County for his arrest. The officers then searched the Defendant and his truck, without warrant or consent. At some point while the search was going on, the officers learned that there was no outstanding warrant for the Defendant's arrest.

The officers alleged that they found, as a result of the search, ammunition, a gun, and a baggy of methamphetamine. The baggy was allegedly taken from the Defendant's pocket; the ammunition was alleged to be contained in a plastic Lego bucket; the gun was alleged to be wrapped in plastic under the seat. Following a hearing before the Hon. Charles S. Cody, Chief U.S. Magistrate Judge, a Recommendation was issued, recommending the denial of Defendant's Motion to Suppress.

1. The Defendant objects to the fact finding of the Recommendation that "the evidence shows that before the officers learned there was no warrant for him, Herring had already been

arrested and the methamphetamine, firearm and ammunition had been found." (Recommendation, p. 3.)  Neil Bradley testified at the suppression hearing that he saw the ammunition, baggy [containing methamphetamine] and gun that had been removed from the Defendant's truck "before we learned there might be a problem confirming the warrant." (Transcript, p. 60.)

However, Mr. Bradley's written statement, which was prepared on July 7, 2004 and introduced into evidence at the suppression hearing, stated ". . . . I then grabbed his arms and placed him in handcuffs.  At this point we began to search the vehicle and Sandy Pope called Lt. Davis on his linc and advised that there might be some problems confirming the warrant in Dale County.  A search of the vehicle led to the recovery of . . . [the items at issue in this case]."  Thus, Mr. Bradley's sworn testimony is refuted by his written statement.  Moreover, as further discussed below, the baggy was removed from the Defendant's pocket without any cause at all.

      2.      Defendant objects to the legal and factual findings contained in the Recommendation that "the officers acted in good faith when they stopped and arrested Herring based on the representations of the warrant clerks that there was an active outstanding felony warrant for Herring in Dale County." (Recommendation, p. 4.)  The officers did not act in good faith and the good faith exception for reliance on some other official's information should not apply to the circumstances of this case.

The testimony established that the officers were <u>looking for a reason</u> to stop the Defendant.  Mark Anderson, who was then a deputy with the Coffee County Sheriff's Department, intentionally initiated the warrant inquiry, claiming that he "had been told from a Dale County investigator, Tim Hicks, that there were warrants for Herring." (Transcript, pp. 8 - 9.)  However, he first asked the Coffee County warrant clerk to look for Coffee County warrants for the Defendant.  After learning

there were no Coffee County warrants for the Defendant, he asked the Coffee county warrant clerk to call Dale County. (Transcript, pp. 9, 38.)

Then, the deputy began chasing the Defendant before he even learned if Dale County would honor the alleged warrant. Mark Anderson testified at the suppression hearing that:

> From the time that Sandy said, "Yes, they have warrant on him," until we got behind him, probably two minutes, I mean because she was still on the phone saying, "Yeah, they have a warrant on him" and we were going out the door.
> As we were chasing up to him, I called back on the radio out of the car and asked her if Dale County wanted him, would they come pick him up and she told me, "Yes." At this time she [sic] turned right on 84, Deputy Bradley turned the emergency lights on the vehicle to stop him.

(Transcript, pp. 10 - 11.) As discussed below, Anderson's testimony that he called back to the Coffee County warrant clerk was refuted by the warrant clerk herself.

As the Seventh Circuit held in *BeVier v. Hucal*, 806 F.2d 123, 128 (7th Cir.1986) "A police officer may not close her or his eyes to facts that would help clarify the circumstances of an arrest." "Police officers are allowed to make mistakes, but those mistakes must be reasonable ones."*BeVier v. Hucal*, 806 F.2d at 126 (citing *Brinegar v. United States*, 338 U.S. 160, 176, 69 S.Ct. 1302, 1311, 93 L.Ed. 1879 (1949); *McKinney v. George*, 726 F.2d 1183, 1187 (7th Cir.1983)). Under the circumstances of this case, the deputies' failure to even wait for firm verification of the existence of the warrant or to check back for verification before arresting the Defendant, was not reasonable.

3. The Defendant objects to the Recommendation's finding that there was no subterfuge employed to lure the Defendant to the sheriff's office or to create a cause for a search of his truck. (Recommendation, p. 4, n. 5.) The evidence was clear that Mark Anderson did not initiate inquiries concerning alleged outstanding warrants for the Defendant until the Defendant was leaving the

sheriff's office. Sandy Pope testified that "(w)hen Mr. Herring was leaving the office, Mark Anderson came and asked me if we had any outstanding warrants on him." (Transcript, p. 38.) Moreover, Ms. Pope testified that Mark Anderson never called back to Ms. Pope to check for additional information, even though he had only received the second-hand information from Ms. Pope of an alleged "Failure to Appear" warrant from Dale County:

> Q. Okay. All right. Did you receive at any time calls back from Investigator Anderson after he left your office?
>
> A. He did not call me.
>
> Q. Okay.
>
> A. That I remember.

(Transcript, pp. 39 - 40.)

4. The Defendant objects to the Recommendation's implied finding that the search of the Defendant's pockets was proper. Mark Anderson testified at the suppression hearing that:

> Once he [the Defendant] was cuffed, I started patting him down to search him, made sure he didn't have any weapons or anything like that on him. In his left front pocket I pulled out a small bag that had powder.

(Transcript, pp. 11 - 12.)

Mr. Anderson later described the contents of the "small bag" as "powder residue." Discovery provided to the Defendant has established the weight of the powder residue as 0.12 gram. Having established that the Defendant had no weapons on his person, the deputy had no cause or lawful authority to enter the Defendant's pockets and pull a small bag, weighing barely one-tenth of a gram, from the Defendant's pocket.

As a federal district court in Virginia recently held, a patdown search for weapons for officer

safety is limited to "a 'frisk' of the outer clothing to discover any weapons." Thereafter, the officer may not enter the individual's pockets if he does not feel anything "whose contraband nature is 'immediately apparent.'" If a pocket's contents do not indicate their "contraband nature, the search must stop." *U.S. v. Coletraine*, 2005 WL 1926607, *2 (W.D.Va. August 11, 2005) (citing *Minnesota v. Dickerson*, 508 U.S. 366, 370, (1993) and quoting *U.S. v. Raymond*, 152 F.3d 309, 312 (4th Cir.1998)). There was no "contraband nature" to the contents of Defendant's pockets and Mark Anderson's intrusive search violated the Fourth Amendment.

For the foregoing reasons, Defendant respectfully asks the Court to reject the Recommendation and grant the Motion to Suppress.

**WHEREFORE**, the defendant respectfully prays that this Motion be granted.

Respectfully submitted,

<u>s/Christine A. Freeman</u>
**CHRISTINE A. FREEMAN**
**TN BAR NO.: 11892**
STANDBY COUNSEL for Defendant Herring
Federal Defenders
Middle District of Alabama
201 Monroe Street , Suite 407
Montgomery, AL 36104
TEL:   (334) 834-2099
FAX:   (334) 834-0353
E-Mail: Christine_Freeman@fd.org

5

**CERTIFICATE OF SERVICE**

I hereby certify that on October 7, 2005, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following: Verne Speirs, Esquire, Assistant United States Attorney, One Court Square, Suite 201, Montgomery, Alabama 36104.

        **s/Christine A. Freeman**
        **CHRISTINE A. FREEMAN**
        **TN BAR NO.: 11892**
        STANDBY COUNSEL for Defendant Herring
        Federal Defenders
        Middle District of Alabama
        201 Monroe Street , Suite 407
        Montgomery, AL 36104
        TEL:   (334) 834-2099
        FAX:   (334) 834-0353
        E-Mail: Christine_Freeman@fd.org