IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, SOUTHERN DIVISION


UNITED STATES OF AMERICA      )
                              )
        v.                    )   CRIMINAL ACTION NO.
                              )       1:05cr161-T
BENNIE DEAN HERRING           )          (WO)


### OPINION

Defendant Bennie Dean Herring is charged with one felony count of being a convicted felon in possession of a firearm, 18 U.S.C.A. § 922(g)(1), and one misdemeanor count of intentionally and knowingly possessing a mixture or substance containing a detectable amount of methamphetamine, 21 U.S.C.A. § 844(a). On October 24, 2005, this court adopted the recommendation of the United States Magistrate Judge that Herring's motion to suppress certain "physical evidence" recovered incident to his arrest and search be denied. The court said that a memorandum opinion would follow. This is the promised opinion.

## I. Factual Background

On July 7, 2004, Herring drove to the Coffee County, Alabama Sheriff's Department to check on a vehicle that had been impounded. As Herring was leaving, Investigator Mark Anderson asked Sandy Pope, the warrant clerk for the Coffee County Sheriff's Department, to check whether there were any outstanding warrants in Coffee County for Herring. Pope checked her computer database and advised Anderson that there were no active warrants. Anderson then asked Pope to call the neighboring Dale County Sheriff's Department to see if it had any active warrants for Herring. Pope telephoned Sharon Morgan, the Dale County Sheriff's Department warrant clerk, who reported an active Dale County felony warrant for Herring for a failure to appear. Pope asked Morgan to fax her a copy of the warrant, and informed Anderson of the outstanding warrant.

Anderson and another officer then left the station, pursued Herring, and arrested him. After Herring was

placed under arrest, Anderson searched his front pocket and found a plastic bag containing a powder substance later identified as methamphetamine. A search of Herring's vehicle uncovered a handgun, ammunition, and a knife.

While the arrest and search were occurring, Morgan unsuccessfully tried to locate Herring's warrant. She then called the Dale County Circuit Clerk's Office to see if it had the warrant. Although the Dale County Sheriff's Department and the Clerk's Office are housed in the same building, they have separate computer systems.

The Dale County Clerk's Office informed Morgan that the warrant had been recalled. Normally, Morgan will receive a call from the Clerk's Office, or sometimes from a judge's chambers, alerting her that a warrant has been recalled. Morgan then looks in her computer, finds where the warrant is physically located, and disposes of it. In this instance, however, Morgan had no notice of the recall in her computer.

According to Morgan, Herring's recalled warrant had been returned to the Dale County Clerk's Office without there being a notation of it in the Sheriff's Department's computer system. Morgan admits the mistake was probably the fault of the Dale County Sheriff's Department, not that of the Dale County Clerk's Office.

Upon discovering the mistake, Morgan called Pope to alert the Coffee County authorities. Pope, in turn, called the officers on the scene of Herring's arrest. She explained that there was a problem with the warrant. However, the officers had already completed the arrest and search of Herring before learning this information. About ten to 15 minutes elapsed between when Morgan informed Pope that an active warrant existed and when she called back to rescind that statement.

Herring was later indicted on the charges now before the court.

## II. Discussion

4

In _Arizona v. Evans_, 514 U.S. 1 (1995), the Supreme Court recognized a good-faith exception to the exclusionary rule for evidence seized incident to an arrest occurring as a result of erroneous computer records kept by court employees indicating a valid arrest warrant; there the court clerk failed to inform the sheriff's warrant clerk to remove the warrant at issue. The Court reasoned that: (1) the exclusionary rule was historically designed as a means of deterring police misconduct, not mistakes by court employees; (2) there was no evidence that court employees were inclined to ignore or subvert the Fourth Amendment or that lawlessness among these actors requires application of the extreme sanction of exclusion; and (3) there was no basis for believing that the exclusionary rule would significantly affect court employees responsible for informing the police that a warrant has been quashed since these employees are not adjuncts to the law enforcement team. _Id_. at 15-16. The Court declined to

5

determine whether its holding would apply if police personnel were responsible for the error. <u>Id</u>. at 16 n. 5.

Herring's case, unlike the circumstances in <u>Evans</u>, involves a mistake on the part of law enforcement personnel. Thus, the question for this court is whether the good-faith exception to the exclusionary rule, as articulated in <u>Evans</u>, should be extended to mistakes by police personnel. In unpublished opinions, both the Fifth and the Fourth Circuits stated that the exception should be so extended as long as the circumstances at issue fell within those contemplated in <u>Evans</u> and <u>United States v. Leon</u>, 468 U.S. 897 (1984), and, more specifically, the appellate courts held that the exception should be extended to circumstances almost identical to those regarding the error in the warrant for Herring. <u>United States v. Castaneda</u>, 273 F.3d 1094 (5th Cir. 2001); <u>United States v. Williams</u>, 1998 U.S. App. Lexis 10501 (4th Cir. 1998).

This court also takes guidance in resolving this issue from the reasoning set forth in Justice O'Connor's concurrence in <u>Evans</u>. She notes that the invocation of the good-faith exception to the exclusionary rule should depend on the reasonableness of the police officers' reliance on the recordkeeping system itself. <u>Evans</u>, 514 U.S. at 17. Thus, the good-faith exception should not apply where there is "no mechanism to ensure [the recordkeeping's] system accuracy over time" and where the system "routinely leads to false arrests." <u>Id</u>. In the instant case, the mistake was discovered and corrected within ten to 15 minutes. In addition, there is no credible evidence of routine problems with disposing of recalled warrants.

To be sure, during the first of two suppression hearings, Morgan testified as follows:

> "Q. All right. Ma'am, how many times have you had or has Dale County had problems, any problems with communicating about warrants?
>
> "A. Several times."

During the second hearing she denied that she had said "several times": "I did not say that. I most emphatically did not say that because that most emphatically is not the case." The court has reviewed the court reporter's tape of the first hearing and finds that Morgan did, indeed, say "several times" in response to the question.

However, having made that finding, the court still must conclude that Morgan's "several times" statement is confusing and essentially unhelpful. At both hearings, it is unclear whether Morgan and her questioner were talking about communication problems between the Dale County Sheriff's Department and the Coffee County Sheriff's Department or between the Dale County Sheriff's Department and the Dale County Clerk's Office; in fact, her statement, when considered in the context of all her testimony, suggests that the former may have been the subject. The critical question for the court is whether there was a communication problem regarding recall

warrants between the Dale County Sheriff's Department and the Dale County Clerk's Office, and both the warrant and court clerks from Dale County testified to this court that their recordkeeping systems were, and are, "reliable," that is, that persons receiving information should "be able to rely on what" they are told by the clerks.

For these reasons, the court adopted the recommendation of the United States Magistrate Judge that Herring's motion to suppress certain "physical evidence" be denied.

DONE, this the 26th day of October, 2005.

   /s/ Myron H. Thompson
UNITED STATES DISTRICT JUDGE